IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| LAYNA P.,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>FRANK BISIGNANO,<br>Commissioner of Social Security,<br><br>　　　　　Defendant. | Case No. 1:24-cv-00069-CMR<br><br>**MEMORANDUM DECISION AND ORDER AFFIRMING ALJ DECISION**<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings (ECF 5). 28 U.S.C. § 636(c). Plaintiff Layna P. (Plaintiff), pursuant to 42 U.S.C. § 405(g), seeks judicial review of the decision of the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act (Act). After careful review of the record (Certified Administrative Record (Tr.), ECF 10), the parties' briefs (ECF 13, 18, 21), the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free from reversible error. For the reasons discussed below, the court hereby DENIES Plaintiff's Motion for Review of Agency Action (ECF 13) and AFFIRMS the decision of the Commissioner.

## I.　　BACKGROUND

Plaintiff was 51 years old on her disability onset date of February 1, 2021 (Tr. 77). Plaintiff filed her application for benefits on January 20, 2022, alleging disability due to fibromyalgia, asthma, depression, obesity, and migraine (Tr. 77).

The Administrative Law Judge (ALJ) followed the Commissioner's five-step sequential evaluation process for disability claims. *See* 20 C.F.R. § 404.1520(a)(4).[1] In a decision dated December 20, 2023, the ALJ determined at step two that Plaintiff had severe impairments of fibromyalgia and morbid obesity (Tr. 21). The ALJ found non-severe impairments of kidney stone, asthma, essential tremor, sleep apnea, restless leg syndrome, depression, and anxiety (Tr. 21–22). At step three, the ALJ considered Plaintiff's fibromyalgia under SSR 12-2p and Listings 1.00ff for musculoskeletal impairments and 14.09 for inflammatory arthritis, finding the criteria not met (Tr. 23).

The ALJ next determined Plaintiff had the residual functional capacity (RFC) to perform a range of sedentary to light work with additional limitations (Tr. 23). At step four, the ALJ found that, given this RFC, she was able to perform past relevant work as a customer service representative, a fraud investigator, and a telephone solicitor (Tr. 30). The ALJ therefore concluded that she was not disabled (Tr. 30). The Appeals Council then denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 20 C.F.R. §§ 404.981; 422.210(a). This appeal followed.

## II.    STANDARD OF REVIEW

The Act directs the court to review the ALJ's decision narrowly, to determine only whether the decision applies the correct legal standards and is supported by substantial evidence. 42 U.S.C. § 405(g); *see also, e.g.*, *Staheli v. Comm'r, SSA*, 84 F.4th 901, 905 (10th Cir. 2023). Substantial evidence is "more than a mere scintilla"; it means only "such relevant evidence as a reasonable

---

[1] Citations to the Code of Federal Regulations are to the 2023 edition of 20 C.F.R. Part 404, which govern DIB claims and was in effect at the time of the ALJ's decision. Parallel citations to part 416, which governs claims for SSI, will not be included.

mind might accept as adequate to support a conclusion." *Biestek v. Berryhill,* 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). If the evidence is susceptible to multiple interpretations, the court "may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)). Under this deferential standard, the court "may neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)).

### III.  ARGUMENT

**A.  The ALJ adequately assessed whether Plaintiff's fibromyalgia met or medically equaled a Listing.**

Plaintiff argues that the ALJ did not adequately articulate whether her fibromyalgia medically equaled a listed impairment, such as Listing 14.09D, citing to Social Security Ruling (SSR) 12-2p for support (Pl. Br. 6). *See* SSR 12-2p, 2012 WL 3104869, at *6 ("[Fibromyalgia] cannot meet a listing in appendix 1 because [Fibromyalgia] is not a listed impairment. At step 3, therefore, we determine whether [Fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.").

At step two, the ALJ found that Plaintiff's fibromyalgia was a medically determinable, severe impairment that met the duration requirement (Tr. 21). Because there is no Listing for fibromyalgia, the ALJ considered at step three whether Plaintiff's symptoms from fibromyalgia were medically equivalent to one of the Listings, including Listing 14.09 (Tr. 23). *See* 20 C.F.R.

§ 404.1526(a) (An impairment can be medically equivalent to a listed impairment if it is at least equal in severity and duration to the criteria of any listed impairment). The ALJ found that the record failed to establish that Plaintiff's fibromyalgia, either alone or in combination with any other impairments, led to a finding of disability under any Listing (Tr. 23).

In other parts of the decision, the ALJ also considered the chronological history of Plaintiff's fibromyalgia, her treatment, reported symptoms, and the relevant objective medical evidence (Tr. 25–29). Plaintiff began receiving treatment with primary care physician, Kelly Amann, D.O. (Dr. Amann), in December 2020 (Tr. 25; Tr. 405–06). She complained of back and joint pain and recurrent tremors (Tr. 405–06). Her neurologic examination showed no gross neurological deficits or general weakness in the arms or legs; her sensation, gait, balance, motor strength, and reflexes were all normal (Tr. 405–06). In June 2021, Plaintiff was treated by neurologist Preston Erickson, M.D. (Dr. Erickson) (Tr 25; *see* Tr. 664–65). Dr. Erickson observed that her motor strength, reflexes, coordination, and sensation were normal (Tr. 664). She was using an assistive device (cane), with appropriate stride and arm swing and good stability (Tr. 665). Dr. Erickson started her on Topiramate at this time for tremors and told her to return in four to six weeks (Tr. Tr. 664–65). That same month, Plaintiff asked Dr. Amann to fill out disability paperwork (Tr. 401).

The next month, Plaintiff went to the emergency room (ER) complaining of whole-body pain (Tr. 26; Tr. 375). Plaintiff had other ER visits from July through October 2022, at which she had normal back range of motion, grossly intact cranial nerves, and normal strength and sensation (Tr. 377, 428–29, 475, 538–39, 564, 658–60). Plaintiff followed up with Dr. Amann in July 2021 and was assessed with fibromyalgia (Tr. 25). She had more than 11 positive tender points, thus

4

she met the criteria to be diagnosed with fibromyalgia and she was started on Duloxetine and Prednisone medications (Tr. 361–62). As the ALJ noted, there are no further records from Dr. Amann (Tr. 25). It appears that Plaintiff did not receive any treatment between approximately July 2021 and April 2022 (Tr. 26). The ALJ not only acknowledged Plaintiff's ER visits at which she complained of all "whole body pain" (Tr. 26; *see* Tr. 375, 568) but also considered that this lack of treatment suggested that conservative treatment was effective in controlling Plaintiff's symptoms during this time period, and that the claimant's symptoms were generally not as extreme as she has otherwise claimed (Tr. 26).

The ALJ also considered that, in April 2022, Plaintiff established care with neurologist Kurtis Ellis, M.D. (Dr. Ellis) (Tr. 26; *see* Tr. 650–51). At this visit and all subsequent visits, Dr. Ellis observed stable findings, with Plaintiff exhibiting no acute distress, no abdominal tenderness, no leg/ankle edema, and an intact neurological exam with no obvious deficits (Tr. 26; Tr. 622–24, 629–30, 632–33, 639–41, 645–46, 647–48, 650–51). A few months later, Nicole Leonard, M.D. (Dr. Leonard) examined Plaintiff and noted that she was independent with driving, toileting, bathing, grooming, dressing, eating, and meal preparation (Tr. 439). On exam, the claimant had some deficits, including pitting edema in the legs, some reduced strength in the right hand, and an antalgic gait (Tr. 26; *see* Tr. 441–44). Finally, the ALJ considered Plaintiff's reported activities, including crocheting, making resin art, reading, writing, playing piano, and socializing with her grandchildren (Tr. 27).

The ALJ's discussion (Tr. 25–29) of this conflicting record evidence supported the step three finding that Plaintiff did not meet or medically equal the criteria of a listed impairment. *See Richardson v. Perales*, 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon

situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). The Tenth Circuit has recognized that, when evaluating an ALJ's finding at one step of the sequential evaluation process, a reviewing court may look elsewhere in an ALJ's decision to find evidence supportive of that finding. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005) ("[A]n ALJ's findings at other steps of the sequential evaluation process may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment[.]").

Plaintiff cites to *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996), for support of her position that the ALJ's articulation was inadequate.[2] However, Plaintiff fails to correctly identify the controlling legal authority in *Fischer-Ross*, which clarified *Clifton*. *See Fischer-Ross*, 431 F.3d at 733–34 ("*Clifton* does not remotely suggest that findings at other steps of an ALJ's analysis may *never* obviate the lack of detailed findings at step three. *Clifton* sought only to ensure sufficient . . . explanation of findings to permit meaningful review." (citing *Clifton*, 79 F.3d at 1009)). The Tenth Circuit has held that an ALJ is not required to copy her discussion of the evidence from one part of her decision and paste it into another part. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [an] opinion.").

---

[2] Plaintiff also cites to *Ann S v. Kijakazi*, 2:20-CV-00841-JCB, 2022 WL 204596 (D. Utah Jan. 24, 2022) and *Jessica G. v. Kijakazi*, 2:20-CV-00500-JNP-CMR, 2022 WL 348471 (D. Utah Jan. 5, 2022), *report and recommendation adopted,* 2:20-CV-00500-JNP-CMR, 2022 WL 344598 (D. Utah Feb. 4, 2022), arguing that these cases support her position that the ALJ's articulation was insufficient. These cases are inapplicable because neither case involves a step three issue. Rather, the cases address whether the ALJ adequately discussed whether the claimants' fibromyalgia was a medically determinable or severe impairment at step two.

To the extent Plaintiff argues that the ALJ was required to further articulate his finding regarding medical equivalence, SSR 17-2p provides that "the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment" and that, "[g]enerally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." 2017 WL 3928306, at *4. The court need not reach Plaintiff's functional equivalence arguments because the ALJ complied with the applicable regulations in finding that Plaintiff's fibromyalgia was not medically equivalent to any of the listings, including Listing 14.09 (Tr. 23).

Even if the ALJ had been required to do more in making her medical equivalence finding, Plaintiff's broad argument that some of the evidence of record supports her preferred interpretation is not enough to warrant remand (*see* Pl. Br. 7–9). Plaintiff fails to meet her burden to show how the evidence compels a finding that she medically equaled a Listing on a criteria-by-criteria basis. *Duncan v. Colvin*, 608 F. App'x 566, 576 (10th Cir. Apr. 2, 2015) ("Because [the claimant] has not satisfied all of the Listing's criteria, she cannot prevail at step three as a matter of law."); *see Fischer-Ross*, 431 F.3d at 733 (At step three, claimant has "burden to present evidence showing her impairments meet or equal listed impairments"). Although Plaintiff points to some evidence that she was diagnosed with fibromyalgia and that she took medication for fibromyalgia (*see* Pl. Br. 5–9), she fails to show that her interpretation of that limited view of the evidence compels a different result than that reached by the ALJ through her reasonable consideration of the evidence, as would be required to discard the ALJ's findings in favor of Plaintiff's. *Lax*, 489 F.3d at 1084 (The court may not displace the ALJ's choice between two fairly conflicting views).

### B. The ALJ had no duty to recontact Dr. Leonard and the record was sufficiently developed.

Plaintiff argues that the ALJ failed to further develop the record when she did not recontact Dr. Leonard regarding those parts of her opinion that were vague (Pl. Br. 10–12). Dr. Leonard examined Plaintiff in June 2022 and observed that she had some deficits, including pitting edema in the legs, decreased sensation in the left upper leg and feet, and some reduced strength in both hand grips, the bicep and tricep, but full strength and appropriate muscle bulk and tone elsewhere (Tr. 441). She had reduced range of motion in the right hand, hips, and knees, but normal range elsewhere (Tr. 442–43). She was able to lift and carry light objects (Tr. 443). She had an antalgic gait, difficulty performing toe walk due to poor balance, difficulty with tandem gait and was unable to hop bilaterally due to poor balance, but she was able to perform shallow squats and take several steps forward from that position, and was also able to arise from a seated position without assistance (Tr. 443). Plaintiff had an assistive device (cane) but did not use it during the exam (*id.*). She had no difficulty getting up and down from exam table (Tr. 443–44). Dr. Leonard concluded that overall, she

> did not appreciate any deficits that would limit this claimant's ability to sit, stand, or walk for short periods of time. However, she would be unsuitable for activities that require prolonged standing or walking. She would be unsuitable for tasks that require walking over uneven surfaces or prolonged slopes (i.e., inclines or declines). She would be unsuitable for ladders and unrestrained heights. She would be unsuitable for activities that require the use of stairs. [She] did not appreciate any deficits that would limit her ability to lift or carry light objects. She would be able to perform tasks that require fine motor skills with the bilateral hands (i.e., writing, manipulating a coin, and small objects). [She] did not appreciate any deficits that would limit her ability to see, hear, or speak

(Tr. 444). The ALJ explained that Dr. Leonard's limitations to a reduced range of sedentary to light exertional activities were consistent with the overall record, and with Plaintiff's history of

fibromyalgia and obesity (Tr. 26–27). Dr. Leonard supported her conclusions through independent objective evaluation and interview of the claimant. However, certain parts of her opinion were vague and not defined, including that Plaintiff could only sit, stand, or walk for "short" periods of time, that she could not stand or walk for "prolonged" periods, and that she was "unsuitable" for certain activities (Tr. 26–27; *see* Tr. 444).

Plaintiff does not argue that the ALJ's analysis of the persuasiveness of Dr. Leonard's opinion was fatal, or that Dr. Leonard's conclusions were sufficiently specific for the ALJ to assess work-related limitations.[3] Rather, Plaintiff contends that if the ALJ was unsure about the specifics of Dr. Leonard's opinion with respect to work-related limitations, the ALJ should have developed the record on that topic by recontacting Dr. Leonard (Pl. Br. 10–12). An ALJ may recontact a medical source if, after weighing all of the evidence, she cannot reach a conclusion about whether a claimant is disabled. *See* 20 C.F.R. § 404.1520b(b)(2)(i). Here, however, the ALJ was able to determine that Plaintiff was not disabled based on the overall record. The ALJ was under no obligation to recontact Dr. Leonard before discounting the overly broad and vague portions of her opinion. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2001); *see also Garcia v. Saul*, No. 19-873-JHR, 2021 WL 39675, at *7 (D.N.M. Jan. 4, 2021) (rejecting plaintiff's argument that the ALJ should have recontacted a treating physician before discounting his opinion, and noting that "the pertinent regulation does not require the Administration to recontact a medical source where, as here, the remaining evidence permits a determination of disability" (citing 20 C.F.R. §

---

[3] Plaintiff has therefore waived these arguments and any argument regarding the ALJ's treatment of other medical opinions. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) ("We will consider and discuss only those of [plaintiff's] contentions that have been adequately briefed for our review.").

404.1520b(b)). Because the ALJ reasonably discounted Dr. Leonard's conclusions on the basis that they were overboard and vague, the court finds no error.

Plaintiff's remaining arguments regarding the ALJ's alleged failure to properly consider her limitations regarding upper and lower extremities, depression and anxiety, fibromyalgia symptoms, and pain again amount to an invitation for the court to re-weigh the evidence, which it must not do on substantial evidence review. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). There was therefore no legal error, and the ALJ's analysis was supported by substantial evidence.

## IV. CONCLUSION

Because the ALJ's decision is supported by substantial evidence and legally sound, it is AFFIRMED. Judgment shall be entered in accordance with Fed. R. Civ. P. 58, consistent with the U.S. Supreme Court's decision in *Shalala v. Schaefer*, 509 U.S. 292, 296–304 (1993).

DATED this 2 September 2025.

*Cecilia M. Romero*
Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah